UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:03-CR-129 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ROGER BENNETT | : | August 26, 2005 |

**GOVERNMENT'S SENTENCING MEMORANDUM AND MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR DOWNWARD DEPARTURE**

The United States has filed a "substantial assistance" motion in this case pursuant to Section 5K1.1 of the United States Sentencing Guidelines and 18 U.S.C. § 3553(e). The motion requests that the Court impose a sentence below the defendant's applicable guideline range because the defendant has provided substantial assistance to the Government in the investigation and prosecution of other persons who have committed criminal offenses. The nature, extent, and significance of the defendant's cooperation are detailed in this memorandum.

**I. Introduction**

On May 13, 2003, pursuant to a plea agreement, Roger Bennett entered a plea of guilty to a one-count information charging him with conspiracy to impair and impede the lawful govenmental functions of the Internal Revenue Service, in violation of Title 18, United States Code, Section 371. As part of a plea agreement, the parties stipulated that the defendant conspired with Kurt Claywell to defraud the United States and to impair the administration of the revenue in connection with federal employment taxes. Specifically, the defendant admitted that he helped to prepare a falsified computer printout in connection with a 1998 employment tax audit of Claywell's electrical contracting companies, and that he personally submitted that false document to an IRS Revenue Agent. The Revenue Agent had been trying to determine whether anyone paid by Claywell as a subcontractor (with no employment taxes paid) instead should have

been paid as an employee. Together with Claywell and his bookkeeper James Dempsey, the defendant agreed to create a falsified printout which purported to be a list of subcontracting expenses, but which falsely omitted certain payments which the Revenue Agent would have re-categorized as taxable payments to employees. As a result of this fraud, Claywell evaded approximately $10,500 in employment taxes.

Aside from the defendant's involvement in the falsified printout, the remaining information about the defendant's activities discussed herein was largely provided by the defendant himself during proffer sessions. Accordingly, pursuant to U.S.S.G. § 1B1.8, this information may not be taken into consideration when calculating the defendant's offense level at sentencing.

The Presentence Report prepared by the United States Probation Office calculates the defendant's offense conduct at an offense level of 12. Subtracting two levels for acceptance of responsibility, pursuant to Guidelines Section 3E1.1, results in a total offense level of 10. With a Criminal History Category of I, the defendant is exposed to a term of incarceration of 6-12 months. Sentencing is scheduled for August 30, 2005.

## II. Discussion

Section 5K1.1 of the Sentencing Guidelines permits the Court to impose a sentence of imprisonment below a defendant's applicable Sentencing Guideline range

> [u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, . . .

U.S.S.G. § 5K1.1. Section 3553(e) of Title 18 of the United States Code permits the Court to impose a sentence of imprisonment below the otherwise applicable statutory minimum under the

same circumstances. The decision whether to make a motion for downward departure rests exclusively with the Government. 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1; *United States v. Garcia*, 926 F.2d 125, 128 (2d Cir. 1990) (quoting *United States v. Rexach*, 896 F.2d 710, 714 (2d Cir. 1990)); *United States v. Huerta*, 878 F.2d 89 (3d Cir. 1989). The Court in *Huerta* observed that the question of "substantial assistance" is "self evidently a question that the prosecution is uniquely fit to resolve." *Huerta*, 878 F.2d at 92. Upon the filing by the Government of a motion pursuant to U.S.S.G. § 5K1.1 and Section 3553, "the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect on defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e). *See also Huerta*, 878 F.2d at 94. The Sentencing Guidelines, Section 5K1.1(a), provide that the appropriate reduction shall be determined by the Court based upon, but not limited to, the following considerations:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and

(5) the timeliness of the defendant's assistance.

These criteria are addressed in turn below.

**A.    Nature and Extent of the Defendant's Assistance**

In multiple debriefing sessions with federal authorities, the defendant provided significant information about financial activities at Claywell Electric Co., Inc., and particularly about illegal activities involving the company's owner, Kurt Claywell. Among other things, the defendant provided significant information about Claywell's falsification of additional documents during the 1998 employment tax audit (beyond the printouts of which the Government had been aware); about Claywell's manipulation of his corporate books to deceive his bonding company (which insured the completion of electrical contracts) and to evade corporate taxes; and about Claywell's fraudulent inflation of his home's basis on his 2000 tax return, in order to evade capital gains taxes on the sale of that home.

The defendant also provided information about a meeting among himself, Claywell, and Claywell's personal assistant Sara Taylor, during which Claywell (with the defendant's complicity) sought to obstruct justice. After the commencement of the present criminal investigation, it became clear that federal authorities were focusing on Claywell's practice of paying personal expenses out of corporate funds, and then disguising those expenditures in the corporate ledger as job-related expenses. The handwriting on particular invoices directing that particular expenses be coded to this or that job, however, was not that of Claywell. He always directed someone else to do the coding, and left no paper trail identifying himself as the source of the decision to assign personal expenses to work-related categories. During a meeting between Claywell, Taylor, and the defendant, Claywell sought to further insulate himself from criminal liability. Claywell (with the defendant's complicity) falsely suggested to Taylor that if anyone inquired as to why personal expenses had been assigned to job-related categories, she could say that she had decided to do so on her own; that she had naively (though mistakenly) assumed her

choice of account categories was correct; and that she assumed the accountants would fix any errors by the time tax season arrived. All present at the meeting knew that this suggestion was false. Based on information about this meeting provided by the defendant and Taylor, Claywell was subject to an obstruction-of-justice enhancement at his sentencing.

The defendant also reviewed records obtained through search warrants and grand jury subpoenas, and assisted the Government in reconstructing certain financial matters. The information was useful to the Government in establishing Claywell's guilty knowledge and intent with respect to acts of tax evasion involving total losses in excess of $550,000.

### B.    Significance and Usefulness of the Defendant's Assistance

The assistance provided by the defendant has been extremely valuable. In part as a result of the defendant's cooperation, authorities were able to identify numerous personal expenses paid out of Claywell's corporate funds, and to issue numerous grand jury subpoenas in an effort to corroborate the personal nature of these expenses.

Specifically, the defendant informed the Government that although he had been privy to Claywell's efforts to obstruct the 1998 employment tax audit, Claywell had never informed him that he was paying hundreds of thousands of dollars of personal expenses out of corporate funds. Once the present investigation started, however, Claywell disclosed this scheme to the defendant and asked him to review his books and records, and to compile a detailed list of the personal expenses that had been buried in the corporate books. Because he had undertaken this review for Claywell, the defendant was able to offer significant assistance to law enforcement agents who were seeking to ascertain the scale of Claywell's tax fraud, and to itemize the particular expenses which were personal in nature.

The defendant also discussed in some detail how Claywell manipulated his periodic "work-in-progress" reports to deceive his bonding company and to evade taxes. The corporate income tax returns of Claywell Electric Co. are calculated according to the completed-contracts method of accounting. According to this method, the corporation realized income and expenses relating to a particular contract for tax purposes only in the year in which work for that contract was completed. From 1997 through 2001, Claywell directed the defendant and others to alter the work-in-progress reports of Claywell Electric Co., in order to minimize the amount of income that would be recognized for tax purposes in any given year. They altered records to make completed jobs appear to be still open, so that income attributable to those jobs would not be realized in a timely manner. Additionally, Claywell would direct the defendant and others to alter records to shift costs into more profitable contracts that were closing, and to shift costs out of less profitable jobs that were closing, so that the corporation would ultimately report less income on its corporate income tax returns. The defendant prepared corporate tax returns for Claywell Electric Co., Inc., which were based on the false figures contained in the altered work-in-progress reports. This, in turn, made the corporate tax returns themselves false. All of this was done at Claywell's behest, and this information was substantially corroborated by Dempsey.

Due in part to the defendant's cooperation, Kurt Claywell entered a guilty plea pursuant to a plea agreement, in which he admitted participating in a *Klein* conspiracy with the defendant and Dempsey to impair and impede the due administration of the federal tax laws. Furthermore, in part because of the defendant's cooperation, the plea agreement between Claywell and the United States contained a full stipulation of his sentencing guidelines, with no disputed issues regarding base offense level or enhancements. (The only real disputed issue at Claywell's

sentencing related to later-arising facts, namely Claywell's failure to accept responsibility based on his submission of false amended tax returns.)

    C)    **Truthfulness, Completeness and Reliability of the Defendant's Information and Testimony**

Evidence obtained from other sources, including documents and other cooperating witnesses, substantially corroborates information provided by the defendant, which therefore is believed to be complete, truthful and reliable. For example, the defendant provided a detailed account of how Claywell instructed him and others to manufacture false documentation in connection with the 1998 employment tax audit. This information was substantially corroborated by cooperating witnesses James Dempsey and Pamela Hill, as well as other former employees of Claywell Electric. Likewise, information provided by the defendant about his involvement in Claywell's planting of a false exculpatory story with Sara Taylor was corroborated by Taylor herself. Moreover, in the defendant's recounting of this episode, he candidly admitted his complicity in suggesting the false story to Taylor. At no point did information obtained by the Government indicate that the defendant had ever falsely minimized his involvement with any part of the scheme.

    D)    **Timeliness of the Defendant's Assistance**

In this case, the defendant provided timely information. He was the second of four cooperating witnesses to agree to provide the Government with information relating to Claywell's crimes. Early in the investigation, shortly after Dempsey began to cooperate, the Government confronted Bennett with information indicating that he had been involved in creating the falsified computer printouts during the 1998 audit. Bennett (represented by Attorney Stephen Manning) immediately agreed to cooperate with the Government.

Bennett met with agents and prosecutors on multiple occasions, including proffer sessions. He provided significant information before the indictment of Kurt Claywell, all of which was provided at a time that was ultimately useful in obtaining a search warrant, in determining where to direct grand jury subpoenas, and arriving at Claywell's eventual guilty plea.

### E)    Injury Suffered by the Defendant

As a result of his cooperation against Claywell, the defendant has no longer been employed as an accountant at Claywell Electric, and faces possible disciplinary action by state licensing authorities.

### III. Conclusion

The Government believes that the nature and extent of the assistance provided by the defendant warrants the filing of a substantial assistance motion so that the Court has the discretion to depart downward from any applicable guideline range. In cooperating with the Government, the defendant provided extensive information about the criminal activities of Claywell. His cooperation was partially responsible for the guilty pleas entered by Kurt Claywell.

The Government believes that the defendant's guidelines are correctly calculated in the PSR, and that the defendant's offense level is 10 and his criminal history category is I. The Government respectfully requests that the Court impose a sentence below the defendant's applicable guideline range.

Respectfully submitted,

JOHN H. DURHAM
ACTING UNITED STATES ATTORNEY


STEPHEN B. REYNOLDS
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT19105

for WILLIAM J. NARDINI
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT16012
157 CHURCH STREET, 23RD FLOOR
NEW HAVEN, CT 06510
(203) 821-3748
fax (203) 773-5377
william.nardini@usdoj.gov

<u>CERTIFICATION OF SERVICE</u>

This is to certify that a copy of the within and foregoing has been sent by e-mail this 26th day of August 2005 to:

Stephen V. Manning, Esq.
O'Brien, Tanski & Young, LLP
CityPlace II - 185 Asylum Street
Hartford, CT 06103-3402
SVM@otylaw.com


_____
Stephen B. Reynolds, Assistant U.S. Attorney,
for William J. Nardini, Assistant U.S. Attorney